UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHEMOIL CORPORATION, a California
corporation

    Plaintiff,

v.                                                 Case No:  2:12-cv-472-Ftm-99SPC

MSA V and TEM ENTERPRISES,

    Defendants.
_____/

## ORDER

This matter comes before the Court on the Defendant, Xtra Airways' Motion to Compel Production of Documents (Doc. #23) filed on January 30, 2013. The Plaintiff, Chemoil, filed its Response in opposition (Doc. # 25) on February 13, 2013. The Motion is fully briefed and ripe for the Court's review.

The Federal Rules state that, "[t]he party upon whom the request [for production] is served shall serve a written response within 30 days after the service of the request." Fed. R. Civ. P. 34(b). Likewise, a party upon whom interrogatories have been served has 30 days to respond either by filing answers or objections to the propounded interrogatories. Fed. R. Civ. P. 33(b). If the serving party does not receive a response to their interrogatories and request for production, then the serving party may request an order compelling disclosure. Fed. R. Civ. P. 37(a). Whether or not to grant the motion to compel is at the discretion of the trial court. Commercial Union Insurance Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984).

The Defendant moves the Court to compel better responses to its requests for production (RFP) numbers 1, 2, 4, 5, 8, 9, 10, 14, 6, 21, 23, 25, 28, 19, and 22. The RFPs were not presented in sequential order in the Defendant's brief, and therefore, the Court will address them

as presented by the Defendant in its Motion.  Further several of the RFPs are grouped together based upon the documents and information sought by the Defendant and the Court will address those groupings as argued by the Defendant in its Motion.

RFP number 1 seeks "Any and all agreements between Chemoil and Direct Air."  The Plaintiff objected to RFP number 1.  Specifically, the Plaintiff stated:

> Plaintiff objects to this Request for Production ("RFP") 1 on the grounds that the term "agreements" is not adequately defined by XTRA. The term "agreements" is also overbroad, in that the request, as worded, could encompass agreements between CHEMOIL and Direct Air rather than those related to fuel provided to the specific aircrafts in dispute in this case. As worded, this RFP calls for information not limited to the time period relevant to the claims and issues asserted in this instant lawsuit, because such information and documents are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections, and without waiver of same, Plaintiff will produce copies of the Agreement ("Agreement") between CHEMOIL and non-party Southern Sky Air and Tours d/b/a Direct Air ("Direct Air"), executed on December 24, 2012, and the Addendum to FMA dated January 24, 2012, by and between CHEMOIL, Direct Air, and King Williams Aviation ("King Williams") related to the breach of the FMA and the repayment arrangements and conditions of same ("Letter Agreement"), and the specific guarantee agreement by and between CHEMOIL, Direct Air, and King Williams wherein King Williams guaranteed payment of all outstanding Direct Air debt owing to CHEMOIL ("Guarantee Agreement") and the Escrow Agreement ("Escrow Agreement") by and between CHEMOIL, Direct Air, and King Williams. Plaintiff has already provided copies of all invoices from CHEMOIL, all of which are subject to standard terms and conditions, which also forms an agreement between CHEMOIL and Direct Air. Plaintiff has no other documents responsive to this Request in its possession, custody, or control.

To the extent that the Plaintiff relies on objections stated in conjunction with its answer those objections are overruled.  This Court has held "[i]f an objection to a discovery request is raised, and then the question is answered "subject to" or "without waiving" the objection, this court is reluctant to sustain the objection. Pepperwood of Naples Condominium Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co., WL 4382104  *4 -5 (M.D. Fla. September 20, 2011) (citing Mann v. Island Resorts Development, Inc., 2009 WL 6409113 *2–3 (N.D. Fla. Feb.21, 2009) (waiving the objection in the case where the party filed an objection and then answered the

question in spite of the objection). Although this seems to be an increasingly common approach to discovery, it raises a fairly straightforward question: if a party objects to a question or request but then answers, has the objection been waived despite the claimed reservation of the objection? This court cannot logically conclude that the objection survives the answer. Simply put, the rules do not on their face give a party that option. Pepperwood of Naples Condominium Ass'n.,WL 4382104 at *4 -5 (citing  Mann, 2009 WL 6409113 at *2–3). Rule 34(b)(2), relating to request for production, provides that a responding party shall state in writing what documents will be produced, and that if objection is made to part of the request, the objection must specify the part and *permit inspection of the rest.* Pepperwood of Naples Condominium Ass'n.,WL 4382104 at *4 -5 (emphasis added).  Objecting but answering subject to the objection is not one of the allowed choices under the Federal Rules. Id.; Mann, 2009 WL 6409113 at *2–3. *See also* Martin v. Zale Delaware, Inc., 2008 WL 5255555 *2 (M.D. Fla. December 15, 2008) (noting that "such an objection and answer preserves nothing and wastes the time and resources of the parties and the court").

Even though the practice has become common here and elsewhere, courts have found that whenever an answer accompanies an objection, the objection is deemed waived, and the answer, if responsive, stands. Pepperwood of Naples Condominium Ass'n.,WL 4382104 at *4-5; Consumer Electronics Association v. Compras and Buys Magazine, Inc., 2008 WL 4327253 *2 (S.D. Fla. Sept.18, 2008) (holding that formulaic objections followed by an answer preserves nothing and serves only to waste the time and resources of both the parties and the court, because such practice leaves the requesting party uncertain as to whether the question has been fully answered or whether only a portion of the question has been answered); Meese v. Eaton Manufacturing, Co., 35 F.R.D. 162, 166 (N.D. Ohio 1964) (holding that a party who objects and

then answers an interrogatory waives that objection); Wright, Miller & Marcus, Federal Practice and Procedure: Civil § 2173 (stating "[a] voluntary answer to an interrogatory is also a waiver of the objection.").

Furthermore, answering subject to an objection lacks any rational basis. There is either a sustainable objection to a question or request or there is not. Pepperwood of Naples Condominium Ass'n.,WL 4382104 at *4-5. Other courts have remarked that all a mixed response really says is the counsel does not know for sure whether the objection is sustainable, that it probably is not, but thinks it is wise to cover all bets anyway, just in case. Mann, 2009 WL 6409113 at *2–3. The Court sets out the above to caution the Parties as to this practice in the future. Thus, the objections are overruled.

Given that the objections are overruled, the Court now turns to the Plaintiff's response. The Plaintiff states that it would produce the agreements between Direct Air, King Williams, and Chemoil. The Plaintiff then states it has no other responsive documents in its possession, custody or control related to the RFP. Thus, the Motion to Compel RFP number 1 is due to be denied.

RFP number 2 requests "[a]ny and all agreements between Chemoil and King Williams." The Plaintiff filed the same objections which were overruled and incorporated its response from RFP number 1. Since the Plaintiff states it produced all of the agreements between itself, King Williams, and Chemoil the Motion to Compel RFP number 2 is denied.

RFP number 4 asks for "[a]ny and all communications or other documents between Chemoil and Direct Air." After making its standard objection, the Plaintiff stated that some of the requested documents were protected by the work product privilege as they relate to agreements made in regard to Direct Airs' bankruptcy and itself. Otherwise, the Plaintiff agreed

4

to produce any and all fuel tickets, invoices, payment data, accounts receivable, application of payment information, funds, and accountings, emails between Chemoil and Direct Air from approximately December 1, 2011, through March 13, 2012, and the Financial Statements provided by Direct Air to Chemoil.

The Plaintiff alleges the documents sought are protected by the work product privilege because they are communications between the bankruptcy trustee for Direct Air and counsel for the Plaintiff Chemoil relating to the debt for fuel and the bankruptcy. The Defendant argues that the work product doctrine was waived by the Plaintiff when it revealed the documents to its adversary, Direct Air, in the bankruptcy litigation. As such, the Defendant states the documents should be released because they have already been given over to a third non-party specifically the bankruptcy Trustee for Direct Air. While the Defendant argues that all documents should be produced, the Defendant does specifically state it wants documents Bates stamped CPL000033-000040 and CPL000048-000054. The designated documents are e-mails between the Plaintiff and the Direct Air Trustee and are listed on the Plaintiff's privilege log as protected by the work product privilege.

Regarding the work product objection, the attorney work product doctrine protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews. U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp., 630 F.Supp.2d 1332, 1336-1337 (M.D. Fla. 2007) (citing Fed.R.Civ.P. 26(b)(3)); Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L. Ed. 451 (1947). Work product protection applies to "documents and tangible things ... prepared in anticipation of litigation or for trial" by or on behalf of a party. U.S. Fidelity & Guar. Co, 630 F.Supp.2d at 1336-1337 (citing Fed.R.Civ.P. 26(b)(3)). If documents and materials are produced

in the ordinary course of business or other non-litigation purposes, they do not qualify as work product. See Advisory Committee Notes to Rule 26(b)(3). The mere possibility that a certain event might lead to future litigation does not render privileged all documents prepared in the course of business. U.S. Fidelity & Guar. Co, 630 F. Supp.2d at 1336-1337.

  While the Plaintiff attempts to assert the work product doctrine arguing that the e-mails between its Direct Air and Chemoil are protected, the Defendant did not request information between the Chemoil's Counsel and Chemoil or any of Chemoil's employees or representatives related to this litigation, but to e-mails between Direct Air's bankruptcy Trustee and Chemoil regarding the debt for fuel uploads that may be directly related to the debt for fuel uploads in this case. Once the communications were made to an outside party, or in this case to the opposing party, debtor or adverse party in the Direct Air bankruptcy case, the work product doctrine was waived by the Plaintiff. Live Nation Worldwide, Inc. v. Cohl, 2011 WL 5597348 * 1 (S.D. Fla. November 17, 2011) (citing Chick-fil-A v. ExxonMobile Corp., WL 3763032 * 3 (S.D. Fla. November 10, 2009) (holding that voluntary disclosure of work product information to an adversary waives work product protection as to that information). As such, documents Bates stamped CPL000033-000040 and CPL000048-000054 are due to be produced. Otherwise, the request is overbroad and almost impossible to respond without some time frames or other information describing what it is the Defendant is seeking.

  RFPs 5, 8, 9, 10 and 14 all relate to how payments were received, made or applied to the Direct Air's account by Chemoil.

  RFP 5 reads "[a]ny and all communications or other documents between Chemoil and King Williams."

RFP 8 asks for "[a]ny and all documents relating to or reflecting the payments you received from Direct Air."

RFP 9 requests "[a]ny and all documents relating to or reflecting how the payments you received from Direct Air were applied including, but not limited to, documents reflecting the invoice or fuel uplifts to which these payments were originally applied."

RFP 10 states "[a]ny and all accounting of the payments you received from Direct Air, including but not limited to all documents provided by Direct Air reflecting how the payments were applied."

And finally RFP 14 asks for "[a]ny and all communications or other documents relating in any way to the manner in which payments by Direct Air should or would be applied including, but not limited to, internal Chemoil communications or other documents."

The Plaintiff objected to each of the above listed RFPs arguing that the requests are overbroad and not limited by any time frames as well as claiming that the information involves trade secrets and further that the documents are protected by the attorney client privilege and/or work product privilege. The Plaintiff's objection regarding the unlimited time frame is well taken. As drafted, the RFPs are overbroad and not limited by any specific time frame. However, the information sought is relevant to the Defendant's affirmative defenses of unclean hands and set off that King Williams Air guaranteed the payment for the fuel purchases made by Direct Air for Xtra's aircraft. Thus, the information requested by the Defendant should be produced but limited in time and scope. The information is limited in time from December 1, 2011, the time Direct Air and Chemoil began their relationship and July 30, 2012, the date the Defendant was

7

served with the Summons and Complaint for this litigation in the State Court.[1]  The Scope of the discovery is limited to the documents that apply to the two (2) aircraft own by Xtra and at issue in this litigation.

While the Plaintiff claims the attorney client privilege for these documents arguing they were made in anticipation of the instant litigation, fuel guarantees made by King Williams Air, Inc. could not have been made in anticipation of this litigation but are fact based documents related to who would be responsible to pay for the fuel uplifts at issue rather than confidential attorney client communications. U.S. ex. Rel. Locey v. Drew Medical, Inc., 2009 WL 88481 *1 (M.D. Fla. January 12, 2009) (citing Upjohn Co. v. United States, 449 U.S. 383, 395-396, 101 S. Ct. 677, 66 L. Ed. 584 (1981) (holding client may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney).  Likewise, any accounting applications of payments received for the fuel and or fuel tickets are not attorney client confidential communications, but instead fact based documents that must be produced. Id.

Further the work product privilege objection does not apply to the RFP's because they relate to normal business transactions regarding how the fuel uplifts would be paid.  If documents and materials are produced in the ordinary course of business or other non-litigation purposes, they do not qualify as work product. See Advisory Committee Notes to Rule 26(b)(3).  The mere possibility that a certain event might lead to future litigation does not render privileged all documents prepared in the course of business. U.S. Fidelity & Guar. Co., 630 F.Supp.2d at 1336 -1337.  Thus, the work product privilege does not apply to requested documents because the fuel payments are a normal business transaction for the Plaintiff.

---

[1] This case was removed to this Court from the Twentieth Judicial Circuit Court in for Lee County Florida on August 29, 2012.

The Plaintiff's trade secret objection also fails in this instance. Whether a particular type of information constitutes a trade secret is a question of fact. International Hair & Beauty Systems, 2011 WL 5359264 at *4 (citing Capital Asset Research Corp. v. Finnegan, 160 F.3d 683, 686 (11th Cir.1998)). Florida's Uniform Trade Secrets Act defines a trade secret as follows:

> [I]nformation, including a formula, pattern, *compilation,* program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4).

In an action involving trade secrets, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy. American Red Cross v. Palm Beach Blood Bank, 143 F.3d 1407, 1410 (11th Cir.1998) (applying Florida law). Information generally known or readily ascertainable cannot qualify for trade secret protection. Id.

Any agreements or payments made on the fuel upload debt would not necessarily contain independent economic value because the information sought in the RFPs are case specific to the payments made in regards to the fuel uploads at issue in this litigation. Thus, the trade secret objection also fails and the documents requested on RFPs 5, 8, 9, 10 and 14 are due to be produced.

The Plaintiff also objects to RFP 9 arguing that the Defendant is assuming the payments were applied rather than made on the entire account's outstanding balance. The objection lacks merit because it goes to weight of the evidence and not the relevance of the discovery at issue.

Thus, documents responsive to RFPs 5, 8, 9, 10 and 14 as limited by the Courts time frames and scope and are due to be produced.

RFP numbers 6, 21, 23, 24, 25, and 28 ask for documents as they relate to Chemoil's review of non-party customer's credit and payment guarantees.

RFP number 6 asks for "[a]ny and all documents relating to your decision to extend credit to Direct Air, including but not limited to any documents relating to any analysis of the financial condition of Direct Air or King Williams." The Plaintiff objected stating:

> The Defendant's Request is not relevant to any of the claims or defenses asserted in the instant action, and are not reasonably calculated to lead to the discovery of admissible evidence, in that F.S. Chapter 329 has no specific requirement that any specific type of analysis of "credit" be performed as a condition precedent to the fuel delivered to the Aircraft and/or the filing of the Aircraft Claims of Lien. The only statutory requirements in F.S. chapter 329 relate to post-fueling matters, i.e,-- Notices to Owners and Recording Requirements. Neither statute, nor existing Florida Case Law, requires the exercise of "due diligence" prior to extending credit to a potential customer or prior to the filing of a Claim of Lien. Moreover, an oil company involved in the same and/or resale of fuel on the open market, the terms upon which Plaintiff buys and sells its oil, is a confidential trade secret completely outside the scope of the instant litigation. The internal business decision process of CHEMOIL' S employees, in analyzing pricing calculations formulas and fuel market opportunities regarding existing charter operations prior to the fuel sold to the Defendants and uplifted to their Aircrafts is well beyond the scope of the instant litigation, and could not possibly be relevant to any legally cognizable defenses to the Plaintiff's Claims. Similarly, the Plaintiff objects to RFP 6 as the Request seeks privileged and confidential trade secret information regarding the internal decision making process of CHEMOIL to extend credit and what factors were taken into consideration regarding same. Subject to these objections, and without waiver of same, Plaintiff has/will produce the Financial Statement provided by Direct Air prior to signing of the Agreement. All other documents responsive to this RFP 6 have been listed in Chemoil's Amended Privilege Log.

RFP number 21 asks for "[a]ll documents referring or relating to your efforts to obtain information regarding the creditworthiness of Direct Air or King Williams." The Plaintiff objected stating:

> Objection. The Defendant's Request is not relevant to any of the claims or defenses asserted in the instant action, and is not reasonably calculated to lead to the discovery of admissible evidence, in that F.S. Chapter 329 has no specific requirement that any specific type of analysis of "credit" be performed as a condition precedent to the fuel delivered to the Aircraft and/or the filing of the Aircraft Claims of Lien. The only statutory requirements in F.S. Chapter 329 relate to post-fueling matters, i.e,--Notices to Owners and Recording Requirements. Neither statute, nor existing Florida Case Law, requires the exercise of "due diligence" prior to extending credit to a potential customer or prior to the filing of a Claim of Lien. Moreover, an oil company involved in the same and/or resale of fuel on the open market, the terms upon which Plaintiff buys and sells its oil, is a confidential trade secret completely outside the scope of the instant litigation. The internal business decision process of CHEMOIL' S employees, in analyzing pricing calculations formulas and fuel market opportunities regarding existing charter operations prior to the fuel sold to the Defendants and uplifted to their Aircrafts is well beyond the scope of the instant litigation, and could not possibly be relevant to any legally cognizable defenses to the Plaintiff's Claims. Similarly, the Plaintiff objects to RFP 21 as the Request seeks privileged and confidential trade secret information regarding the internal decision making process of CHEMOIL to extend credit and what factors were taken into consideration regarding same.  Lastly, Plaintiff would object to providing any communications under this request which involve how Plaintiff evaluates its business decision to advance credit (as trade secrets) and those communications wherein Plaintiff is or was seeking advice from counsel, on the grounds of attorney-client privilege, as well as work product privilege, as the same were created to render legal advice to Plaintiff and/or in anticipation of litigation. Subject to these objections, and without waiver of same, Plaintiff will produce the financial statements being produced by CHEMOIL which were provided by Direct Air and/or the Defendants in the <u>Chemoil Corporation d/b/a Chemoil Aviation v. King Williams Aviation, LLC, et al.</u>, in Broward Circuit Court Case Number 12019528 ("KWA Lawsuit"). Any other documents responsive to this RFP 21 have been included in CHEMOIL'S Amended Privilege Log.

Request for production number 23 seeks "[a]ll of your policies and procedures relating to determining creditworthiness or extending credit to a customer for Fuel Services."

Again, the Plaintiff objected to the production stating:

> See Response to RFP to in that it seeks documents covered by the Trade Secret Privilege.  Furthermore, this RFP 23 is not limited in scope and/or time frame. Plaintiff also objects to RFP 23 on the grounds that it is not relevant to the claims or defenses asserted in this case, and is not reasonably calculated to lead to the discovery of admissible evidence, in that F.S. Chapter 329 has no specific

11

      requirement that any specific type of analysis of "credit" be performed as a condition precedent to the fuel delivered to the Aircraft and/or the filing of the Aircraft Claims of Lien. The only statutory requirements in F.S. Chapter 320 relate to post-fueling matters, i.e. —Notices to Owners and Recording Requirements.

      The Plaintiff argues in its brief that the requests pertaining to its internal credit procedures regarding non-parties King Williams and Direct Air are protected trade secrets and irrelevant to any claims or defenses. The Plaintiff's objection that its credit policy toward non-parties is irrelevant is well taken. Chemoil's determination regarding the credit worthiness of the non- parties King Williams and Direct Air is not relevant to the issues regarding the non-payment of the Defendant Xtra's fuel uplifts. Therefore, the motion to compel RFP numbers 6, 21 and 23 is due to be denied.

      RFP number 25 asks for "[a]ll of your policies and procedures relating to utilization or reliance on the availability of statutory liens in connection with the provision of fuel to customers on credit." The Plaintiff objected referencing their objection to RFPs numbers 6 and 23. Similarly, RFP number 28 asks for "[a]ll of your policies and procedures relating to collecting unpaid charges for fuel services provided for aircraft." The Plaintiff objected again citing to the attorney client and work product privileges.

      As for the Plaintiff's objections to RFP 25 and 28 that its lien policy is protected by the attorney client privilege and/or work product privileges, the objection lacks merit. As noted above, any documents that are related to the Plaintiff's policy regarding liens on aircrafts for failure to pay fuel bills would be prepared in the ordinary course of business and therefore, not privileged communications between attorney and client nor work product prepared in anticipation of this litigation. U.S. Fidelity & Guar. Co., 630 F.Supp.2d at 1336 -1337. The Plaintiff's policy as it relates to liens on aircrafts for failure to pay fuel bills is directly relevant to

this case since the Plaintiff has placed a lien on two (2) of the Defendant Xtra's aircraft. Thus, Plaintiff's attorney client privilege/ work product claim is overruled and the Motion to Compel RFP numbers 25 and 28 is due to be granted.

RFP number 19 asks for "[a]ny and all documents reflecting any payments received from any source relating to the fuel uplifts for which you seek payment." While the Plaintiff objects to the requested production, any payments made on the fuel uplifts at issue in this case are relevant and due to be produced. Thus, the Motion is granted as to request number 19.

RFP number 22, seeks "[a]ll non-privileged documents reflecting or referring to claims made or lawsuits filed by you against King Williams for unpaid fuel services provided to any aircraft, including but not limited to pre-suit correspondence, pleadings, discovery responses, and deposition transcripts or other recorded statements."

The Plaintiff objected to the request arguing that:

> the request is seeking irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence. Simply stated, whether CHEMOIL has filed a breach of contract and/or negligent misrepresentation claim against another party, has no impact on whether (a) XTRA operated the aircraft at the time of CHEMOIL'S fuel was uplifted, and (b) whether XTRA or any other party, paid for the fuel. Subject to these objections, and without waiver of same, Plaintiff will produce demand letters to King Williams. Copies of the Amended Complaint and other pleadings in the KWA Lawsuit are public records and can be directly obtained by Defendant XTRA from the Broward County Clerk of Court.

The Defendant argues that the Plaintiff has initiated an action against King Williams and certain individuals who seek to recover the debt allegedly owed by Direct Air to the Plaintiff including for the fuel uplift that is at issue in this case. The case involves the breach of a guarantee agreement between the Plaintiff and King Williams in which Williams agreed to pay for the fuel uplift used by the Defendant Xtra's airplanes at issue in this case. The Plaintiff has agreed to produce non-privileged information but informed the Defendant that it could obtain all

13

the other requested documents from the Broward County Courthouse since the court records are available to the public.

Stating that the Defendant has the same public access as the Plaintiff to documents is not a proper objection. Pepperwood of Naples Condo Assoc. v. Nationwide Mutual Fire Ins. Co., 2011 WL 3841557 * 4 (M.D. Fla. August 29, 2011). Since the Plaintiff has agreed to produce non-privileged documents the Plaintiff must also produce those documents from the King Williams State Court case, in its possession, custody and control that could be otherwise obtained from the State Court records.

Accordingly, it is now

**ORDERED:**

The Defendant Xtra Airways' Motion to Compel Production of Documents (Doc. #23) is **GRANTED in part and DENIED in part**.

(1) The Defendant Xtra Airways' Motion to Compel Production of Documents Requested in RFP 5, 8, 9, 10, 14, 19, 22, 25, and 28 is **GRANTED** within the time and scope restrictions described above in the body of this Order.

(2) The Plaintiff has up to and including **April** 1**, 2013**, to produce the requested documents.

(3) The Defendant Xtra Airways' Motion to Compel Production of Documents Requested in RFP 6, 21, and 23 is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 12th day of March, 2013.

*[Signature: Sheri Polster Chappell]*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record